IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

SANDRA IWAISHI,

    Plaintiff,                        No. CIV S-04-1917 KJM

vs.

JO ANNE B. BARNHART,
Commissioner of Social Security,

    Defendant.                   <u>ORDER</u>

_____/

        Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying an application for Disability Income Benefits ("DIB") under Title II of the Social Security Act ("Act"). For the reasons discussed below, the court will deny plaintiff's motion for summary judgment and the Commissioner's cross-motion for summary judgment, but will remand under sentence four of 42 U.S.C. § 405(g) for further development of the record .

/////

/////

/////

/////

1

I. Factual and Procedural Background

In a decision dated December 17, 2003, the ALJ determined plaintiff was not disabled.[1] The ALJ's decision became the final decision of the Commissioner when the Appeals Council denied plaintiff's request for review. The ALJ found plaintiff has severe chronic low back pain, severe diabetes and left foot Morton's neuroma but these impairments do not meet or medically equal a listed impairment; plaintiff is not credible; plaintiff retains the residual functional capacity to perform a wide range of sedentary and light work; plaintiff can perform her past relevant work; and plaintiff is not disabled. Administrative Transcript ("AT") 258-259.

/////

---

[1] Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program, 42 U.S.C. § 401 et seq. Supplemental Security Income ("SSI") is paid to disabled persons with low income. 42 U.S.C. § 1382 et seq. Under both provisions, disability is defined, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment." 42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A). A five-step sequential evaluation governs eligibility for benefits. See 20 C.F.R. §§ 423(d)(1)(a), 416.920 & 416.971-76; Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987). The following summarizes the sequential evaluation:

> Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.
> Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.
> Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App.1? If so, the claimant is automatically determined disabled. If not, proceed to step four.
> Step four: Is the claimant capable of performing his past work? If so, the claimant is not disabled. If not, proceed to step five.
> Step five: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process. Bowen, 482 U.S. at 146 n.5. The Commissioner bears the burden if the sequential evaluation process proceeds to step five. Id.

1  Plaintiff contends the ALJ improperly discredited her testimony and improperly rejected the
2  opinion of a treating physician.
3  II.  Standard of Review
4        The court reviews the Commissioner's decision to determine whether (1) it is
5  based on proper legal standards under 42 U.S.C. § 405(g), and (2) substantial evidence in the
6  record as a whole supports it. Copeland v. Bowen, 861 F.2d 536, 538 (9th Cir. 1988) (citing
7  Desrosiers v. Secretary of Health and Human Services, 846 F.2d 573, 575-76 (9th Cir. 1988)).
8  Substantial evidence means more than a mere scintilla of evidence, but less than a
9  preponderance. Saelee v. Chater, 94 F.3d 520, 521 (9th Cir. 1996) (citing Sorenson v.
10 Weinberger, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975)). "It means such relevant evidence as a
11 reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402
12 U.S. 389, 402, 91 S. Ct. 1420 (1971) (quoting Consolidated Edison Co. v. N.L.R.B., 305 U.S.
13 197, 229, 59 S. Ct. 206 (1938)). The record as a whole must be considered, Howard v. Heckler,
14 782 F.2d 1484, 1487 (9th Cir. 1986), and both the evidence that supports and the evidence that
15 detracts from the ALJ's conclusion weighed. See Jones v. Heckler, 760 F.2d 993, 995 (9th Cir.
16 1985). The court may not affirm the ALJ's decision simply by isolating a specific quantum of
17 supporting evidence. Id.; see also Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989). If
18 substantial evidence supports the administrative findings, or if there is conflicting evidence
19 supporting a finding of either disability or nondisability, the finding of the ALJ is conclusive, see
20 Sprague v. Bowen, 812 F.2d 1226, 1229-30 (9th Cir. 1987), and may be set aside only if an
21 improper legal standard was applied in weighing the evidence, see Burkhart v. Bowen, 856 F.2d
22 1335, 1338 (9th Cir. 1988).
23 III.  Analysis
24        A.  Credibility
25        Plaintiff contends the ALJ improperly discredited her pain testimony. The ALJ
26 determines whether a disability applicant is credible, and the court defers to the ALJ's discretion

3

if the ALJ used the proper process and provided proper reasons.  See, e.g., Saelee v. Chater, 94 F.3d 520, 522 (9th Cir. 1995).  If credibility is critical, the ALJ must make an explicit credibility finding.  Albalos v. Sullivan, 907 F.2d 871, 873-74 (9th Cir. 1990); Rashad v. Sullivan, 903 F.2d 1229, 1231 (9th Cir. 1990) (requiring explicit credibility finding to be supported by "a specific, cogent reason for the disbelief").

In evaluating whether subjective complaints are credible, the ALJ should first consider objective medical evidence and then consider other factors.  Bunnell v. Sullivan, 947 F.2d 341, 344 (9th Cir.1991) (en banc).  If there is objective medical evidence of an impairment, the ALJ then may consider the nature of the symptoms alleged, including aggravating factors, medication, treatment, and functional restrictions.  See id. at 345-47.  The ALJ also may consider: (1) the applicant's reputation for truthfulness, prior inconsistent statements or other inconsistent testimony, (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment, and (3) the applicant's daily activities.  Smolen v. Chater, 80 F.3d 1273, 1284 (9th Cir. 1996); see generally SSR 96-7P, 61 FR 34483-01; SSR 95-5P, 60 FR 55406-01; SSR 88-13.  Work records, physician and third party testimony about nature, severity, and effect of symptoms, and inconsistencies between testimony and conduct also may be relevant.  Light v. Social Security Administration, 119 F.3d 789, 792 (9th Cir. 1997).  A failure to seek treatment for an allegedly debilitating medical problem may be a valid consideration by the ALJ in determining whether the alleged associated pain is not a significant nonexertional impairment.  See Flaten v. Secretary of HHS, 44 F.3d 1453, 1464 (9th Cir. 1995).  The ALJ may rely, in part, on his or her own observations, see Quang Van Han v. Bowen, 882 F.2d 1453, 1458 (9th Cir. 1989), which cannot substitute for medical diagnosis.  Marcia v. Sullivan, 900 F.2d 172, 177 n.6 (9th Cir. 1990).  "Without affirmative evidence showing that the claimant is malingering, the Commissioner's reasons for rejecting the claimant's testimony must be clear and convincing."  Morgan v. Commissioner of Social Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999).

Plaintiff testified she could stand for an hour and sit between an hour to two hours. AT 318. She also testified she could not perform her previous work. AT 322. The ALJ discredited plaintiff's testimony regarding her limitations as inconsistent with the kind and amount of pain medications plaintiff was taking. AT 257. The record, however, demonstrates plaintiff reported a bad reaction to narcotics and thus was generally limited to over-the-counter analgesics. AT 294, 297, 299, 300. At times, plaintiff also was prescribed Darvocet for pain, although one record suggests an allergy to this medication as well. AT 228, 229, 299, 300. The ALJ mischaracterized the pain medications reported to examining consulting physician Dr. Jordan, noting only plaintiff's use of Valium and ignoring plaintiff's reported use of Advil on a daily basis, 2-3 times per day. AT 257, 302. Plaintiff also underwent epidural injections for relief of pain. AT 230, 292. The ALJ also discredited plaintiff's testimony because plaintiff "refused to undergo surgery." AT 257. The record indicates however, that although surgery has been recommended, plaintiff must lose weight of at least 40 pounds prior to undergoing any surgical procedure. AT 182, 228, 229, 232, 304 (plaintiff's weight at time of recommended surgery was 260 pounds; in July 2003, plaintiff's weight was 248 pounds). The ALJ also discredited plaintiff's testimony as inconsistent with her reported activities of daily living of doing light housework, reading and watching television. AT 257. Plaintiff testified, however, that these activities were extremely limited. AT 319-322. As is well-established, plaintiff need not vegetate in a dark room to be eligible for disability benefits. Fair v. Bowen, 885 F.2d 597, 603 (9th Cir. 1989); Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998).

In light of this record, the ALJ's reasons for finding plaintiff not credible are neither clear nor convincing. See Gonzalez v. Sullivan, 914 F.2d 1197, 1201 (9th Cir. 1990). The ALJ's credibility determination cannot stand. However, there are further matters that must be developed at the administrative level. Plaintiff's testimony is ambiguous with respect to her standing and sitting limitations due to pain. Although plaintiff testified she was limited to an hour of standing and an hour to two hours of sitting, it is not clear from the record whether

plaintiff was testifying these limitations were the total amount of time she could engage in these activities or whether she could engage in these activities for a longer period of time but simply had to change position after sitting or standing for a certain amount of time.  AT 318 (although plaintiff testified she must "switch" positions after certain amount of time, record is not clear regarding total amount of time plaintiff can engage in sitting and standing activities).  If the former, plaintiff cannot engage in any work and must be found disabled.  If the latter, vocational testimony should be taken to determine whether there are any jobs within plaintiff's residual functional capacity that can accommodate the need to frequently change positions.  Accordingly, on remand, the ALJ will consider the entire record and if plaintiff's testimony is still found not credible, specific findings supported by substantial evidence must be made regarding her testimony.  Cf. Varney v. Sec'y Health and Human Services, 859 F.2d 1396, 1401 (9th Cir. 1988) (improperly discredited subjective complaints considered established as true where it is clear from administrative record that ALJ would be required to award benefits if excess pain testimony were credited).

B.  Treating Physician

Plaintiff also contends the ALJ improperly rejected the opinion of a treating physician, Dr. Lim.  The weight given to medical opinions depends in part on whether they are proffered by treating, examining, or non-examining professionals.  Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995).  Ordinarily, more weight is given to the opinion of a treating professional, who has a greater opportunity to know and observe the patient as an individual.  Id.; Smolen v. Chater, 80 F.3d 1273, 1285 (9th Cir. 1996).

To evaluate whether an ALJ properly rejected a medical opinion, in addition to considering its source, the court considers whether (1) contradictory opinions are in the record, and (2) clinical findings support the opinions.  An ALJ may reject an uncontradicted opinion of a treating or examining medical professional only for "clear and convincing" reasons.  Lester, 81 F.3d at 831.  In contrast, a contradicted opinion of a treating or examining professional may be

rejected for "specific and legitimate" reasons, that are supported by substantial evidence. Id. at 830.  While a treating professional's opinion generally is accorded superior weight, if it is contradicted by a supported examining professional's opinion (e.g., supported by different independent clinical findings), the ALJ may resolve the conflict. Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995) (citing Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989)).  In any event, the ALJ need not give weight to conclusory opinions supported by minimal clinical findings. Meanel v. Apfel, 172 F.3d 1111, 1113 (9th Cir.1999) (treating physician's conclusory, minimally supported opinion rejected); see also Magallanes, 881 F.2d at 751.  The opinion of a non-examining professional, without other evidence, is insufficient to reject the opinion of a treating or examining professional. Lester, 81 F.3d at 831.

Dr. Lim, who treated plaintiff for her spinal problems, opined in a medical report dated October 29, 1999 that plaintiff was unable to sit or walk for more than thirty minutes and that plaintiff was permanently incapacitated from her present occupation.  AT 192-193.  The ALJ did not expressly address this opinion.  AT 254.  Defendant offers several bases, allegedly grounded in the record, in support of the contention that the ALJ committed no error in failing to address Dr. Lim's opinion.  This court reviews the adequacy of the reasons specified by the ALJ, not the post hoc conclusions of the agency.  See Bunnell, 947 F.2d at 345-46.  Defendant also contends that the failure to consider Dr. Lim's opinion was harmless error.  The court cannot find harmless error here.

There is evidence in the record plaintiff had some improvement in her medical condition subsequent to an intradiskal electrodermal annuloplasty ("IDET") procedure performed in January 2000.  AT 134-135; see also AT 73 (in February 2000, plaintiff indicated procedure reduced pain about 35%).  By May 2000, Dr. Lim concluded the IDET procedure had failed.  AT 182.  In June 2000, plaintiff reported her condition as "slightly worse" since the procedure.  AT 231.  Plaintiff underwent epidural steroid injection for her pain in June 2000.  AT 230.  In July 2000, plaintiff again reported the IDET procedure had not alleviated her symptoms nor had any

7

relief been afforded by the epidural steroid injection. AT 229. Although plaintiff reported in October 2000 that her lower back pain had improved, she was still taking Advil and Darvocet for pain. AT 228. In January 2003, plaintiff reported her pain as progressively worsening and was prescribed Valium, Phenergan and Darvocet. AT 299. She again underwent epidural injection in March 2003, without significant relief. AT 290, 292. It is evident from this record that although Dr. Lim's opinion predates plaintiff's IDET procedure, plaintiff's condition was unchanged from that procedure. This treating physician's opinion is relevant to plaintiff's disability claim and must be considered by the ALJ. If Dr. Lim's limitations are rejected by the ALJ, specific and legitimate reasons for doing so must be set forth in the ALJ's decision.

      For the foregoing reasons, this matter will be remanded under sentence four of 42 U.S.C. § 405(g) for further development of the record and further findings addressing the deficiencies noted above.

      Accordingly, IT IS HEREBY ORDERED that:

      1. Plaintiff's motion for summary judgment is denied;

      2. The Commissioner's cross-motion for summary judgment is denied; and

      3. This matter is remanded for further proceedings consistent with this order.

DATED: March 30, 2006.

                          UNITED STATES MAGISTRATE JUDGE

006
iwaishi.ss